[Cite as *State v. Hensgen*, 2017-Ohio-8793.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2017-01-008 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 12/4/2017 |
| - vs - | : | |
| | : | |
| WADE J. HENSGEN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016CR0307

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Denise S. Barone, 385 North Street, Batavia, Ohio 45103, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Wade J. Hensgen, appeals from his conviction and aggregate five-year prison sentence he received in the Clermont County Court of Common Pleas after a jury found him guilty of several felony drug offenses. For the reasons outlined below, we affirm.

{¶ 2} On June 6, 2016, the Clermont County Grand Jury returned an indictment charging Hensgen with two second-degree felonies for illegal manufacturing of

methamphetamine and aggravated possession of methamphetamine, as well as two fifth-degree felonies for possession of heroin and aggravated possession of fentanyl. The charges arose after Hensgen was found by his mother overdosed on heroin in a detached garage at her home located on property at 1712 Lindale-Nicholsville Road, Clermont County, Ohio, thus requiring EMS to administer Narcan to save her son's life.[1] It is undisputed that Hensgen, who was then 40 years old, lived at the Lindale-Nicholsville Road property with his mother.

{¶ 3} After the call for help went out, EMS and several law enforcement officers from the Clermont County Sheriff's Office responded to the scene, as well as one agent with the Union Township Police Department assigned to the Clermont County Narcotics Unit. Once there, the officers discovered in plain view a syringe next to where Hensgen had overdosed, as well as substances the officers believed to be heroin and fentanyl, an active "one-pot" methamphetamine lab, and numerous other items affiliated with the production of methamphetamine. Testing of the items later revealed the active methamphetamine lab contained a total of 100.938 grams of methamphetamine. Hensgen later admitted to using heroin and further acknowledged that this was his third overdose that week that required EMS to administer Narcan in order to save his life.

{¶ 4} On August 17, 2016, after filing several motions waiving his speedy trial rights, Hensgen filed a motion to suppress the items seized from the garage where he was found following his heroin overdose. In support of this claim, Hensgen alleged the law enforcement officers – Corporal William Crouch, Deputies Danny Spears and Tyler Kramer, and Agent Bryan Taylor – violated his Fourth Amendment rights by conducting an unlawful search of the garage. The trial court held a hearing on the matter on October 11, 2016, wherein it heard

---

1. Narcan is a form of naloxone that is used for the emergency treatment of a known or suspected opioid overdose.

testimony from Corporal Crouch, Deputies Spears and Kramer, and Agent Taylor. The relevant testimony from these witnesses is summarized more fully below.

{¶ 5} Deputy Kramer was the first to arrive at the scene after receiving a report of an unresponsive male, later identified as Hensgen. Once there, and upon entering the garage where Hensgen was found unresponsive by his mother, Deputy Kramer testified he observed EMS providing treatment to Hensgen in order to revive him. During this time, Deputy Kramer testified he noticed in plain view a syringe on the floor next to Hensgen's body, thus indicating a possible heroin overdose. Deputy Kramer further testified EMS told him they had administered Narcan to Hensgen. It is undisputed that Hensgen was subsequently revived, removed from the scene by EMS, and transported by ambulance to the hospital. However, prior to Hensgen being removed from the scene, and while still inside the garage, Deputy Kramer testified he also observed in plain view what he believed to be an active methamphetamine lab contained within a mason jar located on a small workbench within a few feet from where Hensgen had been found.

{¶ 6} After discovering what he believed to be an active methamphetamine lab, Deputy Kramer testified he and Deputy Spears, who had since arrived at the scene, evacuated the garage and the surrounding area due to "safety issues" resulting from the volatile nature and potential fire hazards associated with active methamphetamine labs. Deputy Kramer then testified that Deputy Spears called their supervisor, Corporal Crouch. According to Deputy Kramer, this is standard protocol upon discovering what might be an active "one-pot" methamphetamine lab. Deputy Kramer also testified he found several additional syringes "just out in the open" next to the suspected methamphetamine lab.

{¶ 7} As noted above, Deputy Spears was next to arrive on the scene. Upon his arrival, Deputy Spears testified he observed the unresponsive male, Hensgen, receiving treatment from EMS with the assistance of Deputy Kramer. After EMS revived Hensgen with

Narcan and placed him in the ambulance for transportation to the hospital, Deputy Spears testified he and Deputy Kramer "looked in the general area where the squad members were to make sure that they had their bags, equipment, and stuff like that." During this check, Deputy Spears testified he also observed in plain view several syringes and "a glass jar that was boiling over" sitting on a workbench less than five feet from where Hensgen had been found. Based on his training and experience, Deputy Spears also testified he believed the mason jar contained an active "one-pot" methamphetamine lab.

{¶ 8} Continuing, Deputy Spears testified he then called Corporal Crouch and later the Clermont County Narcotics Unit to come to the scene to identify and safely dismantle the suspected methamphetamine lab. Just as Deputies Kramer and Spears, Corporal Crouch also testified that upon his arrival at the scene he observed the suspected methamphetamine lab "in plain sight right there in the – on the little table or shelf thing * * *." Thereafter, when asked if an active methamphetamine lab like the one found in the garage created any safety concerns, Corporal Crouch testified that "[w]ith any meth lab there is a safety concern" since "[i]t could blow up or start a – sparks – some sparks in there, just a fire hazard."

{¶ 9} Agent Taylor testified he was dispatched to the scene to identify and dismantle the suspected "one-pot" methamphetamine lab. During this time, it is undisputed that Agent Taylor took a sample from the mason jar that tested positive for methamphetamine. After dismantling the methamphetamine lab, Agent Taylor testified he then looked around the garage for any other vessels since "it's common sometimes for there to be more than one reaction vessel, to be in an area where there's one." It is undisputed that Agent Taylor's search of the garage uncovered lithium batteries, empty pseudoephedrine blister packs, two pieces of tubing – all items commonly used in the manufacturing of methamphetamine – as well as "a white powder on a tray that was on the workbench, and a syringe." Hensgen did not testify at the suppression hearing.

{¶ 10} On October 21, 2016, the trial court issued a decision denying Hensgen's motion to suppress. In so holding, the trial court determined exigent circumstances existed that permitted Deputy Kramer to lawfully enter the garage where Hensgen was receiving medical treatment from EMS for a suspected heroin overdose, during which he noticed in plain view a "needle near the defendant and, within feet of the defendant, he saw what appeared to be an active methamphetamine lab." As a result, the trial court determined Deputy Kramer, and by extension Deputy Spears, Corporal Crouch, and Agent Taylor, "had probable cause to believe that there was a probability or substantial chance of criminal activity." Concluding, the trial court determined "exigent circumstances existed which excused the warrant requirement," and therefore, "the officers' subsequent search of the garage and seizure of suspected drug paraphernalia" did not violate any of Hensgen's constitutional rights.

{¶ 11} The matter then proceeded to a three-day jury trial that ultimately concluded on December 21, 2016. Following deliberations, the jury returned a verdict finding Hensgen not guilty of aggravated possession of fentanyl, but guilty of illegal manufacturing of methamphetamine, aggravated possession of methamphetamine, and possession of heroin. The trial court then merged the charges of illegal manufacturing of methamphetamine with the aggravated possession of methamphetamine for purposes of sentencing, with the state electing to proceed as to the illegal manufacturing of methamphetamine charge. Thereafter, the trial court sentenced Hensgen to serve an aggregate term of five years in prison and notified Hensgen that he would be subject to a mandatory three-year term of postrelease control.

{¶ 12} Hensgen now appeals, raising three assignments of error for review.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO

SUPPRESS.

**{¶ 15}** In his first assignment of error, Hensgen argues the trial court erred by denying his motion to suppress. We disagree.

**{¶ 16}** Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 10. "'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 12, quoting *Burnside*.

**{¶ 17}** Hensgen claims the trial court erred by denying his motion to suppress because the officers' entrance into the garage was improper since he was "incapable of giving permission" due to his then current, unresponsive state. In other words, Hensgen argues the only way the officers could lawfully enter into the garage was if he had personally given them consent to do so. However, it is well-established that law enforcement officers may enter into a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *State v. Phuc Ky Luong*, 12th Dist. Butler No. CA2011-06-110, 2012-Ohio-4520, ¶ 23. That is exactly what occurred here. Therefore, at a minimum, Deputy Kramer, the first law enforcement officer to arrive at the scene, was lawfully permitted to enter into the garage where Hensgen had overdosed in order to assist EMS in

- 6 -

saving Hengen's life. Had the opposite been true, Hensgen may very well have died as a result of his most recent heroin overdose.

{¶ 18} Hensgen also argues that even if there were exigent circumstances to allow Deputy Kramer to lawfully enter the garage to assist EMS in rendering him aid, "the necessity to enter the garage terminated once [he] was removed" from the scene. Yet, just as the trial court found, this ignores the fact that both Deputy Kramer and Deputy Spears testified that they observed in plain view syringe(s) and what they believed to be an active methamphetamine lab contained within a mason jar located on a small workbench next to where Hensgen had been receiving treatment from EMS while lawfully inside the garage. As recognized by the United States Supreme Court, "[o]fficers may seize evidence in plain view if they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made * * *." *Kentucky v. King*, 563 U.S. 452, 131 S.Ct. 1849 (2011), paragraph one of the syllabus. Therefore, as there was no Fourth Amendment violation established in this case, the trial court's decision to apply the plain view exception to the warrant requirement was appropriate and does not constitute reversible error. Accordingly, having found no error in the trial court's decision denying Hensgen's motion to suppress, Hengsen's first assignment of error is without merit and overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE DEFENDANT'S SENTENCE WAS EXCESSIVE.

{¶ 21} In his second assignment of error, Hensgen argues his five-year prison sentence was excessive. However, as this court has stated previously, a sentence that falls within the permissible statutory range is generally "not excessive and does not violate the constitutional prohibition against cruel and unusual punishment." *State v. Bosman*, 12th Dist. Butler No. CA2001-05-101, 2002 Ohio App. LEXIS 85, *3 (Jan. 14, 2002). Such is clearly the case here because Hensgen's five-year prison sentence falls within the statutory range for

the crimes for which he was ultimately convicted and sentenced. *See* R.C. 2929.14(A). There is also nothing about Hensgen's five-year prison sentence that would render it so disproportionate to the offense that it would shock the moral sense of the community. *State v. Accorinti*, 12th Dist. Butler Nos. CA2012-10-205 and CA2012-11-221, 2013-Ohio-4429, ¶ 21. Therefore, Hensgen's claim that his sentence was excessive lacks merit.

{¶ 22} The same is true for Hensgen's claim that his five-year prison sentence was not supported by the record. It is now well-established that this court may increase, reduce, or otherwise modify a sentence that by clear and convincing evidence is unsupported by the record. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 7, citing R.C. 2953.08(G)(2). That is certainly not the case here for the record indicates Hensgen was on community control at the time he committed these offenses. The record also indicates Hensgen has a lengthy criminal record – eight misdemeanors and six felony convictions as an adult – that resulted in Hensgen serving nearly ten years in prison. This includes convictions for attempted aggravated burglary, burglary, two counts of receiving stolen property, two counts of aggravated burglary, and possession of a controlled substance. Hensgen was also, as the trial court stated, "incorrigible as a juvenile," a finding that resulted in Hensgen being adjudicated a delinquent for a felony theft offense.

{¶ 23} As noted above, Hensgen is an admitted heroin addict who was found overdosed next to an active methamphetamine lab, thus placing his mother, son, and many others in danger had there been an explosion. This was Hensgen's third overdose that week each of which required EMS to administer Narcan in order to save Hensgen's life. While this court is fully aware of the struggle of addiction, particularly to opioids, the record fully supports the trial court's decision to sentence Hensgen to an aggregate term of five years in prison, thereby rendering his arguments challenging his sentence without merit. Therefore, finding no error in the trial court's sentencing decision, Hensgen's second assignment of error

is overruled.

{¶ 24} Assignment of Error No. 3:

{¶ 25} APPELLANT'S CONVICTIONS MUST BE REVERSED AS APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 26} In his third assignment of error, Hensgen argues he received ineffective assistance of counsel. We disagree.

{¶ 27} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. In turn, to prevail on an ineffective assistance of counsel claim, Hensgen must show (1) that his trial counsel's performance fell below an objective standard of reasonableness and, (2) that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984); *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 28} As it relates to the first prong regarding his trial counsel's performance, Hensgen must show "'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *State v. Miller*, 12th Dist. Clermont No. CA2011-04-028, 2012-Ohio-995, ¶ 27, quoting *Strickland* at 687. On the other hand, as it relates to the second prong requiring a showing of prejudice, Hensgen must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 42. A "reasonable probability" is a probability that is sufficient to undermine confidence in the outcome. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-

022, 2015-Ohio-3936, ¶ 31, citing *Strickland* at 694.

**{¶ 29}** Hensgen initially argues he received ineffective assistance of counsel because his trial counsel failed to present a "better defense" at trial. Hensgen, however, has not provided this court with any suggestion of what that "better defense" would have entailed or how his trial counsel should have performed differently. Hensgen has also not offered any evidence that the jury's verdict would have been different but for his trial counsel's performance. Hensgen's argument is nothing more than a challenge to his trial counsel's trial strategy in defending him against the various drug charges upon which he was indicted. "The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel." *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43, citing *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001). It is not this court's role to second guess trial counsel's strategic decisions. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. Hensgen's argument otherwise is without merit.

**{¶ 30}** Hensgen also argues he received ineffective assistance of counsel since he "did not get a chance to develop a proper relationship with defense counsel" because he was represented by "a multitude of lawyers" throughout the trial court proceedings.[2] However, outside his blanket claim of prejudice, Hensgen has not offered any evidence that the jury's verdict would have been different had he only been able to "develop a proper relationship" with any single attorney. Moreover, as this court has stated previously, while an indigent defendant has a right to competent counsel, "[t]he right to competent counsel does not

---

2. The trial court initially appointed the public defender's office to represent Hensgen on June 6, 2016. However, the public defender's office had a conflict of interest that required it to withdraw its representation of Hensgen later that same day. One week later, on June 13, 2016, the trial court granted the public defender's motion to withdraw and appointed another attorney to represent Hensgen. Shortly thereafter, on June 23, 2016, a third attorney was designated as Hensgen's trial counsel, a position he held up to and including the October 11, 2016 hearing on Hensgen's motion to suppress. A fourth attorney was then substituted to represent Hensgen during his three-day jury trial and sentencing hearing.

require that a criminal defendant develop and share a 'meaningful relationship' with his attorney." *State v. Cox*, 12th Dist. Clermont No. CA99-02-016, 1999 Ohio App. LEXIS 4863, *13 (Oct. 18, 1999), citing *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610 (1983). Therefore, because there is no requirement that counsel must develop and share a meaningful relationship with his or her clients in order to provide effective, competent representation, Hensgen has failed to establish a claim of ineffective assistance of counsel. Accordingly, finding no merit to either of Hensgen's arguments raised herein, Hensgen's third assignment of error is overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.