[Cite as *State v. Abrams*, 2024-Ohio-2666.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-12-082 |
| | : | O P I N I O N |
| - vs - | | 7/15/2024 |
| | : | |
| DONAVAN L. ABRAMS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2023 CRB 3171(B)

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Maxwell D. Kinman, for appellant.

**S. POWELL, P.J.**

{¶ 1}   Appellant, Donavan L. Abrams, appeals his conviction in the Clermont County Municipal Court after the trial court found him guilty of two counts of first-degree misdemeanor endangering children following a bench trial.  For the reasons outlined below, we affirm Abrams' conviction.

{¶ 2}   On September 19, 2023, a complaint was filed with the trial court charging

Abrams with two counts of endangering children in violation of R.C. 2919.22(A), both first-degree misdemeanors in accordance with R.C. 2919.22(E)(2)(a). The charges arose after it was alleged Abrams waited upwards of 20 minutes before calling 9-1-1 after the victims, his one- and two-year-old daughters, were observed with "pieces" of his prescribed mental health medication in their hands and mouths.

{¶ 3} The record indicates that the children gained access to the medication after the victim's mother, Joyce, retrieved a bag of Abram's medication from its hiding place atop her Clermont County apartment's kitchen refrigerator.[1] Joyce did this in response to Abrams suffering an apparent panic attack and becoming delusional while visiting with the children at her apartment on the afternoon of September 3, 2023. Abrams, who the record indicates took Ecstasy that he purportedly found on the ground prior to his visit with the children, was thereafter arrested on October 6, 2023. Following his arrest, Abrams was arraigned and entered a plea of not guilty to both charges.

{¶ 4} On November 16, 2023, the court held a bench trial on the matter. During trial, the court heard testimony and admitted evidence from a total of five witnesses. This included testimony from the victims' mother, Joyce. Joyce testified that on the day in question, September 3, 2023, she went and retrieved Abrams' bag of medication from its hiding place atop her Clermont County apartment's kitchen refrigerator. Joyce testified that she did this after Abrams had suffered an apparent panic attack and began acting "delusional, talking about things that didn't make any sense." Joyce testified that upon retrieving the bag of Abrams' medication from its hiding place that she removed Abrams' bipolar medicine from the bag and then set the bag down on a nearby windowsill. Joyce testified that she then turned around and handed Abrams his bipolar medication to take.

---

1. This court has changed the name of the victims' mother for purposes of issuing this opinion.

Joyce testified that after handing Abrams his medication that she then turned back around and discovered that her two children had taken some of Abrams' various medications out of the bag and began "popping it out of the blister packs" and putting it in their mouths. This included a medication prescribed to Abrams called Clonidine.[2]

{¶ 5}   Joyce testified that upon observing her children handling and potentially ingesting Abrams' medication that she "freaked out" and wanted to immediately call 9-1-1 for help.  However, as Joyce testified, Abrams was not as concerned and instead suggested that they merely "watch them" for a while to see if it was actually necessary to call 9-1-1 for assistance.  Joyce testified that this was Abrams' way of insinuating that wanting to immediately call 9-1-1 for help was merely her anxiety taking over her thoughts. The record indicates that Abrams later told an intake supervisor employed by Clermont County Children's Services that he did not think his one- and two-year-old daughters potentially ingesting his medication was a "big deal," that it would "just make them sleep," and that "he was just going to let them sleep it off."

{¶ 6}   Joyce testified that she initially agreed with this approach.[3]  However, at trial, Joyce testified that "[o]f course, hindsight, I would have called immediately," but that she "didn't know how the pills worked" and "didn't know that they were instant, as soon as, you know . . . . "  Joyce then testified that after gathering up all of Abrams' medications off the floor, including what was left of those handled by her two children, that over the next what "felt like about 20 minutes" the children "started falling asleep."  Joyce testified that the children falling asleep like this was not normal because it "was just immediate."

---

2. Clonidine is generally prescribed to treat hypertension.  It can also be used to combat anxiety, attention deficit hyperactivity disorder, and opioid withdrawal symptoms, such as elevated heart rate, nervousness, and sweating.

3. Joyce was also criminally charged for her role in this incident.  Joyce agreed to testify against Abrams as part of her plea deal with the state.

Joyce testified that it was at this time that she told Abrams to call 9-1-1 for help.

{¶ 7} The record indicates that the children, one of whom appeared unconscious by the time first responders arrived at Joyce's apartment, were then rushed to the hospital via ambulance where they were treated for a possible prescription drug overdose. This included one of the children being administered Narcan.[4] The record also indicates that while Joyce was "very upset" and "seemed remorseful and regretful over the actions of the day," Abrams' demeanor appeared less concerned for his children's well-being and more "[n]onchalant." This ultimately prompted charges of endangering children being filed against Abrams. When asked why that was, the complaining officer testified:

> The hospital did not make the toxicology reports in regard to testing for Clonidine, so therefore we couldn't present it to the grand jury to see if Clonidine was ingested by the children. The [hospital] tested for Pseudoephedrine and alcohol on the children. So, therefore, with the review of the prosecutor it was determined that the… creating a substantial risk of harm to the children since one child had… both children were transported to the [hospital] and one had to be Narcanned. And the timeframe before help was called for. That's why the charges were filed.

The record indicates that when Abrams was told that charges would be forthcoming that Abrams told the complaining officer to "suck his dick."

{¶ 8} After both parties rested, and upon the conclusion of the parties' closing arguments, the trial court issued its decision from the bench finding Abrams guilty as charged. In so doing, the trial court stated:

> The Court has considered the evidence that's been presented, the testimony that's been presented . . . The Court has considered the arguments of counsel. I'll be honest, I have not considered Mr. Abrams' demeanor in this determination, in my determination. Or whatever he was

---

4. "Narcan is a form of naloxone that is used for the emergency treatment of a known or suspected opioid overdose." *State v. Hensgen*, 2017-Ohio-8793, ¶ 2, fn. 1 (12th Dist.).

Googling.[5] That was just not part of my determination. I agree with [Abrams' defense counsel] that it was an accident. The pills falling. I've not for one moment heard any evidence that anybody did that purposely, gave the children the medication. And I do agree that they tried to remove the medication as soon as possible. But what happened is once that situation happened, the response for their wellbeing was inappropriate, to wait 20 minutes to contact 911 when the mother indicated there… and everyone has agreed there were pills in one youngster's hands and dissolved pills in the other's mouth.

The trial court also noted that one of the children had become "unresponsive," "[r]apidly unresponsive" upon the ambulance first arriving at the scene where "[h]er respirations had decreased to the point where they had to supplement her breathing using a bag respirator," her "pupils had constricted," and "that is a scary situation." Upon issuing its decision, the trial court then scheduled the matter for sentencing on November 30, 2023.

{¶ 9} On November 30, 2023, the trial court held the previously scheduled sentencing hearing. At that hearing, the trial court placed Abrams on a two-year community control term and ordered him to pay a $100 fine plus court costs. Part of the conditions of Abrams' community control required him to serve a total, aggregate term of 350 days in jail, with 219 of those days suspended, less 56 days of jail-time credit. The trial court also required Abrams to successfully complete 90 days at the Clermont County Community Alternative Sentencing Center.[6] The following week, on December 6, 2023, Abrams filed a notice of appeal. Following briefing, Abrams' appeal was submitted to this court for consideration on June 5, 2024. Abrams' appeal now properly before this court for decision, Abrams has raised the following single assignment of error for review.

{¶ 10} AFTER A THOROUGH REVIEW OF THE COMPLETE RECORD, THE

---

5. There was evidence indicating Abrams was looking at the Ohio Revised Code on his cellphone when first responders initially arrived at the scene.

6. The Clermont County Community Alternative Sentence Center, also known as the CASC, is a facility that seeks to provide behavioral health and medical treatments for community members who are struggling with substance use disorders.

TRIAL COURT ERRED IN CONVICTING APPELLANT AS THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION FOR CHILD ENDANGERMENT.

{¶ 11} In his single assignment of error, Abrams argues the trial court's decision finding him guilty of two counts of first-degree misdemeanor endangering children was not supported by sufficient evidence. We disagree.

{¶ 12} "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Such a challenge "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E).

{¶ 13} As noted above, following a bench trial, the court found Abrams guilty of two counts of first-degree misdemeanor endangering children in violation of R.C. 2919.22(A). Pursuant to that statute, no parent of a child under the age of 18 "shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Thus, given the plain language of the statute, it is well established that R.C. 2919.22(A) "'is aimed at preventing acts of omission or neglect when the breach results in a substantial risk to the health or safety of a child.'" *State v. Wyatt*, 2014-Ohio-5194, ¶ 15

(12th Dist.), quoting *State v. Stewart*, 2007-Ohio-6177, ¶ 59 (5th Dist.). It is equally well established that recklessness is the culpable mental state for endangering children in violation of R.C. 2919.22(A). *State v. Ossege*, 2014-Ohio-3186, ¶ 55 (12th Dist.). A person acts recklessly when, with heedless indifference to the consequences, "the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A substantial risk is 'a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist.'" *State v. Shaner*, 2019-Ohio-2867, ¶ 19 (12th Dist.), quoting R.C. 2901.01(A)(8).

**{¶ 14}** Abrams argues the facts in this case do not support the trial court's decision finding him guilty of two counts of first-degree misdemeanor endangering children in violation of R.C. 2919.22(A). This is because, according to Abrams, rather than requiring him to call 9-1-1 immediately after his two children may have potentially "ingested a dangerous drug or poison," it was instead entirely proper and prudent parenting for him to instead implement a "wait-and-see" approach that would allow him the opportunity to determine whether either child showed signs of "drug intoxication" before he called 9-1-1. Abrams argues that this is particularly true in this case when considering there was "no indication" that either of his two children had actually ingested any of his various medications in which they had come in contact.

**{¶ 15}** However, regardless of whether either of the children had, in fact, ingested any amount of Abrams' prescribed medications, given the uncertainty as to whether either child done so, waiting upwards of 20 minutes before calling 9-1-1 in this case without question created a substantial risk to the health and safety of both children given the type of medications that the children had access to. The facts in this case are therefore more than sufficient to support the trial court's decision finding Abrams guilty of two counts of

first-degree misdemeanor endangering children in violation of R.C. 2919.22(A). In so holding, we note that this case should in no way be construed as setting a bright line rule as to when a parent should call 9-1-1 for help when their child has potentially ingested prescription medication(s). This case merely stands for the proposition that, given the facts of this case, Abrams' conviction for two counts of first-degree misdemeanor endangering children in violation of R.C. 2919.22(A) was supported by sufficient evidence. Accordingly, finding no merit to any of Abrams' argument raised herein, Abrams' single assignment of error lacks merit and is overruled.

{¶ 16} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.