[Cite as *State v. Baker*, 2024-Ohio-2856.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-11-015 |
| | : | O P I N I O N |
| - vs - | | 7/29/2024 |
| | : | |
| MARCOS BAKER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20230096


Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel Martin, Assistant Prosecuting Attorney, for appellee.

Caleb Johnson, and Anthony Maiorano, for appellant.



**HENDRICKSON, J.**

{¶ 1} Appellant, Marcos Baker, appeals his conviction in the Fayette County Court of Common Pleas for aggravated trafficking in drugs with a major drug offender specification.  For the reasons discussed below, we affirm.

### I. Factual and Procedural Background

{¶ 2} On October 11, 2022, police met with a confidential informant (CI) who had

arranged a meeting with Baker to purchase one pound of methamphetamine for $2,000. In preparation for the transaction, the police searched the CI and her vehicle to confirm she possessed no drugs. Police then provided the CI with money for the purchase and outfitted her with a surveillance device to record and live-stream audio and video of the transaction. The device could only be activated and deactivated by the police.

{¶ 3} The CI and police then drove to Baker's residence in Jeffersonville, Ohio. While the CI executed the transaction, the police monitored the live feed from the surveillance device. Officers were able to hear the CI knock on the front door of Baker's residence, and call out for "Cos," Baker's nickname. A female voice from inside the home asked, "Who is it," and the CI replied with her name. Baker's wife, Shelby, then appeared in the doorway. The CI said to her "Sorry I'm late," and Shelby replied "You're good."

{¶ 4} The CI then entered the home, and the CI and Shelby walked into the living room where Baker was seated. Baker and the CI discussed the drug transaction and the agreed $2,000 purchase price, the CI handed the money to Baker, and Baker handed the CI a tied-off black bag containing methamphetamine. The CI then departed and gave the police the black bag. The police then searched the CI and her vehicle again, and once again found no contraband.

{¶ 5} Upon return to the Fayette County Sheriff's Office, a detective weighed the drugs on the office's scales and then forwarded them to BCI for official weighing and analysis. A BCI forensic scientist weighed and analyzed the drugs, finding it to be 450.13 grams of methamphetamine, and prepared a report of his findings.

{¶ 6} As a result of the forensic scientist's report, Baker was indicted on April 7, 2023, with two counts of aggravated trafficking in drugs, felonies of the first degree. Count One was based upon the October 11, 2022 drug transaction. Count Two, was based upon a separate drug transaction alleged to have occurred on November 11, 2022. Both

counts were accompanied by a major drug offender specification.

**{¶ 7}** On June 26, 2023, Baker filed a motion to suppress the video and audio recordings of the CI entering his house, his recorded statements, and the drugs obtained from his home, asserting that the CI did not have permission to enter his home and the meeting was equivalent to a warrantless search. A hearing was held on July 31, 2023, and the trial court denied Baker's motion in an entry journalized on August 1, 2023, finding that the transaction between Baker and the CI was prearranged and not a warrantless search.

**{¶ 8}** On April 20, 2023, Baker filed his first demand for discovery. In response, the state provided a photograph of a set of scales alongside the confiscated drugs. On June 26, 2023, Baker filed a motion to compel discovery seeking, in part, an order to compel the state to produce records of the calibration of the scales in the photograph along with "any other scales used to weigh the substances." The photograph of the scales and drugs was taken at the sheriff's office before the drugs were forwarded to BCI. In an entry journalized on July 18, 2023, the trial court denied the motion to compel, reasoning that the scales at the sheriff's office were not used for the official weighing of the drugs, which was instead conducted on scales at BCI. However, the trial court did not address whether production of calibration documents for the BCI scales could be compelled.

**{¶ 9}** The matter proceeded to a jury trial on August 31, 2022. The jury returned a guilty verdict on Count One of the indictment and the accompanying major drug offender specification. However, the jury was unable to reach a verdict on Count Two of the indictment and a mistrial was declared on Count Two. On the state's motion, Count Two of the indictment was ultimately dismissed without prejudice by the trial court. On Count One, the trial court sentenced Baker to a prison term of 11 to 16.5 years.

**{¶ 10}** Baker now appeals, raising five assignments of error for our review.

**II. Legal Analysis**

**{¶ 11}** Assignment of Error No. 1:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO [SUPPRESS].[1]

**{¶ 12}** In his first assignment of error, Baker argues that the trial court erred by not granting his motion to suppress. Baker contends that the CI's entry into his home was an illegal search because the CI was working on behalf of the police and the state failed to establish that the CI entered the home with the express consent of Baker or Shelby. Therefore, Baker argues that the recording of the transaction, his recorded statements, and the drugs that were purchased from his home should have been suppressed. We disagree.

**{¶ 13}** "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Gray*, 2012-Ohio-4769, ¶ 15 (12th Dist.). When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Hensgen*, 2017-Ohio-8793, ¶ 16 (12th Dist.). In turn, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* If the trial court's findings of fact are so supported, "the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

**{¶ 14}** Baker asserts that there was no evidence the drug transaction was prearranged to take place in his house as neither the CI nor the police indicated in the

---

1. The first assignment of error in the Baker's brief reads "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO DISMISS," but Baker's argument is regarding the denial of his motion to suppress.

recording that the meeting was prearranged, and the CI did not testify at the suppression hearing. However, the detective who worked with the CI on this operation testified that he met with her "to discuss a prearranged deal." Furthermore, the circumstances surrounding the transaction indicate it was prearranged. When the CI initially appeared at Baker's door and no one answered her knock, she called out for Baker by his nickname, "Cos," indicating familiarity with Baker. When Shelby came to the door, Shelby excused the CI for being late, establishing that there was a prearranged time for the CI to have arrived. There was no objection made by Baker or Shelby to the CI's entrance into the home as would be expected if she was an uninvited and unwelcome guest. The discussion between the CI and Baker confirming a $2,000 purchase price indicated a prearranged transaction. Finally, Baker had the agreed upon quantity of methamphetamine packaged and ready for delivery to the CI.

{¶ 15} Within his assignment of error, Baker argues that the trial court erred in excluding Shelby's affidavit which he claims clarifies the circumstances of the CI's entry into the home. "The Court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." Crim.R. 12(F). "A trial court considering a motion to suppress may accept affidavits or hold a hearing at which witnesses testify." *State v. Swazey*, 2023-Ohio-4627, ¶ 21. Even though the rules of evidence may not apply to "[d]eterminations prerequisite to rulings on the admissibility of evidence" under Evid.R.101(D)(1), pursuant to Crim.R. 12(F), a trial court may require that evidence be presented in accordance with the rules of evidence or decline to accept evidence it determines to be unreliable.

{¶ 16} Baker did not proffer Shelby's affidavit and it is not part of the record on appeal. Baker asserts that Shelby's affidavit avers that she did not open the door for the CI to enter the home, never signaled for the CI to enter the home, and never invited the

CI to enter the home. As Shelby's affidavit is not part of the record, we are unable to determine whether there was any prejudice resulting from the trial court's refusal to admit the affidavit into evidence. Even if we accept Baker's unsupported assertions as to the contents of Shelby's affidavit, these assertions do not directly contradict the CI having entered Baker's home consensually.

{¶ 17} The trial court declined to admit Shelby's affidavit because Baker had not demonstrated that Shelby was unavailable to testify, Baker had not subpoenaed Shelby, and Shelby did not appear and decline to testify. The trial court also determined that Shelby's affidavit was inadmissible hearsay. Pursuant to Crim.R. 12(F), the trial court had discretion to refuse admission of the affidavit.

{¶ 18} Whether this drug transaction was prearranged and the CI's entry into Baker's home was therefore consensual is a factual question. The trial court resolved this factual issue in favor of the state based upon the circumstances detailed above. This factual finding is supported by competent, credible evidence and we are thus bound to accept it.

{¶ 19} Baker's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO COMPEL CALIBRATION DATE OF SCALES.

{¶ 21} In his second assignment of error, Baker argues that the trial court erred in denying his pretrial motion to compel the state to produce the calibration records of any scales used to weigh the drugs he was charged with selling. Even though the motion did not make reference by name to which specific calibration records were being sought, it is clear Baker was seeking calibration records from the sheriff's Office and BCI. In his motion, Baker asserted that the calibration records were subject to discovery pursuant to

Crim.R. 16(B)(5), as "evidence favorable to the defendant and material to guilt or punishment." Baker argues that he could have used the BCI calibration records for the weighing scales to impeach the BCI forensic analyst who weighed the drugs. He further contends that if the BCI calibration records were produced, there is a "reasonable probability . . . that the jury may not have believed or relied upon his determination that the weight was, in fact, over 100 times the bulk amount." If so, Baker contends he would have not been found guilty of the major drug offender specification and he would have been convicted of only a fourth-degree felony as opposed to a first-degree felony.

{¶ 22} At the hearing on the motion, the state argued that it was not going to use the sheriff's scales at trial and therefore those calibration records were not relevant. As to the BCI calibration records, the state noted that Baker did not demand the analyst's testimony within the time period required by R.C. 2925.51(C) and was thus prevented from receiving it.

{¶ 23} The trial court denied Baker's motion to compel in an entry journalized on July 18, 2023, but only explained why the state could not be compelled to produce the calibration records for the scales at the sheriff's Office. The trial court did not address the calibration records for the BCI scales that were used for the official drug weight.[2]

{¶ 24} Baker sought the calibration records for both the sheriff's scales and BCI's scales. We agree with the trial court's finding that the sheriff's calibration records were not relevant as the state did not intend to use this evidence at trial. Further, Baker did not specifically state how the sheriff's scales would be favorable to him or be material to his guilt or punishment.

---

2. The state's answer brief fails to address whether production of the BCI calibration records could have been compelled, and merely reiterates the trial court's reasoning regarding the sheriff's office scales.

{¶ 25} However, we do not agree with the state's reason for denying Baker discovery of the BCI calibration records because he failed to timely demand the analyst's testimony under R.C. 2925.51(C). Failure to demand an analyst's testimony under the statute does not prevent a defendant from obtaining via discovery the calibration records of the scales used by BCI. The purpose of R.C. 2925.51(C) is to allow a defendant to require the state to call as a trial witness the lab analyst who authored the lab report. If the defendant fails to make this demand within seven days from receiving the lab report, then the state can present the lab report as evidence at trial without the analyst's testimony. The lab report is then considered to be "prima facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance." R.C. 2925.51(C).

{¶ 26} In its judgment entry, the trial court failed to address whether Baker was entitled to BCI's calibration records. We find that this was error. The trial court should have addressed this part of Baker's motion because the state indicated at the hearing it intended to use the weight measurement from BCI's scales as evidence at trial and BCI's scales were the "any scales used to weigh the drugs" in question.

{¶ 27} Even though this was error, we also find that the error was harmless under the circumstances presented here. First, Baker failed to articulate how this evidence would be favorable to him. Since he was not aware of any issues with the calibration of the BCI scales, it was speculative that obtaining these records would have been favorable on cross-examination at trial in an attempt to discredit the BCI lab analyst's findings.

{¶ 28} As it turns out, the BCI lab analyst actually testified at trial and Baker had the opportunity on cross-examination to challenge the calibration of the scales used to weigh the drugs. The BCI lab analyst testified that the scales are calibrated weekly in accordance with BCI procedures, typically on Mondays. However, the Monday before

the drugs were weighed was the day before the Independence Day holiday, and the analyst testified that he could not remember if he worked that day. The analyst testified that if he did not work on Monday July 3, 2023, the scales would have been calibrated on Wednesday, July 5, 2023, the day after the holiday. This exchange only resulted in defense counsel arguing that if the lab analyst cannot remember which date the calibration was performed, what else might he have forgotten? Although this may have provided a marginal argument for defense counsel to use, there was no indication that any errors were made in calibrating the scales. This is not a case where there was an issue of whether the scales were calibrated at all, but only whether they were calibrated on one day or the other prior to weighing the drugs sold by Baker. Therefore, it was not established that BCI's calibration records were favorable to Baker.

{¶ 29} Second, Baker could have subpoenaed the BCI lab records under Crim.R. 17(C). This would have allowed him to obtain a copy of the calibration records in order to cross-examine the lab analyst at trial. He did not.

{¶ 30} Finally, it is highly speculative that the calibration records would have been favorable to Baker in his attempt to prove that the state failed to establish the weight requirement for the major drug offender specification. The bulk amount for methamphetamine is three grams. R.C. 2925.01(D)(1)(g). The major drug offender specification, R.C. 2929.01(W), requires that methamphetamine have a weight of 100 times bulk or more. Thus, the threshold weight for the major drug offender specification in this case is 300 grams. BCI determined that the methamphetamine sold by Baker to the CI weighed 450.13 grams. Therefore, this was not a case where there was a marginal difference between more than 100 times the bulk amount and less than 100 times the bulk amount. The methamphetamine involved in this case is 50% greater than 100 times the bulk amount, making it very difficult for Baker to establish that the substance was less

than 300 grams.

{¶ 31} Nevertheless, there is no indication that the BCI calibration records would have been favorable to Baker, and therefore the state had no duty to produce those records in discovery pursuant to Crim.R. 16(B)(5).

{¶ 32} Baker's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

> THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTIONS FOR JUDGEMENT OF ACQUITTALS.

{¶ 34} In his third assignment of error, Baker argues that the trial court should have granted his Crim.R. 29 motion for acquittal on Count Two because the state failed to prove his identity as the perpetrator. Nevertheless, there is no final appealable order upon which this assignment of error may be based. The jury was unable to reach a verdict on Count Two, resulting in a mistrial as to Count Two. Baker was neither convicted nor sentenced for this offense. The prospect that he may be recharged with this offense does not convert the denial of his motion for a judgment of acquittal into a final appealable order. As this court has previously explained,

> "Regardless of the sufficiency of the evidence at trial, a mistrial following a hung jury does not raise a colorable double jeopardy claim which would prevent the defendant's retrial. In the same manner, when a trial court, following a mistrial, denies a motion to dismiss which claims insufficient evidence, the denial is an interlocutory decree and not a final appealable order."

(Citation omitted.) *State v. Leece*, 1990 Ohio App. LEXIS 1557, at *2 (12th Dist. Apr. 23, 1990).

{¶ 35} Baker's third assignment of error is dismissed for lack of a final appealable order.

{¶ 36} Assignment of Error No. 4:

THE STATE COMMITTED PROSECUTORIAL MISCONDUCT.

**{¶ 37}** In his fourth assignment of error, Baker argues that the state committed prosecutorial misconduct when the prosecutor made improper comments during closing arguments in an attempt to shift the burden of proof onto Baker to prove his innocence. As a remedy, Baker asserts that Count Two of the indictment should be dismissed with prejudice. We disagree.

**{¶ 38}** The test for prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant. *State v. Elmore*, 2006-Ohio-6207, ¶ 62. The focus of "an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 2012-Ohio-4769, ¶ 57 (12th Dist.). As such, prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 2008-Ohio-5416, ¶ 27 (12th Dist.).

**{¶ 39}** Crim.R. 52(B) provides that plain errors "or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error means an obvious defect in trial proceedings that affected the defendant's substantial rights. *State v. Knodel*, 2007-Ohio-4536, ¶ 15 (12th Dist.). Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Grisham*, 2014-Ohio-3558, ¶ 38 (12th Dist.).

**{¶ 40}** Here, Baker did not object to the state's comments during closing arguments, but instead raised them in his post-trial motion for acquittal on Count Two of the indictment, therefore we review for plain error. In her closing, the prosecutor said:

> The defense's entire theory of this case is dirty cops. That's all we've heard about . . . They want you to believe this entire investigation is dirty cops.

. . .

> You know what you never heard from defense counsel? Marcos Baker didn't sell drugs. You never heard it. You never hear defense counsel tell you at any point you never heard any witnesses take that stand and tell you that this defendant did not sell methamphetamine on October 11th of 2022 and November 15th of 2022. Don't let them take the focus off of what you're here today for.

{¶ 41} "It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case." *State v. Collins*, 89 Ohio St.3d 524, 527 (2000). A prosecutor's observation that no witnesses have provided an alibi for the defendant is not a comment on the defendant's silence, nor is it an attempt to shift the burden of proof. *See State v. Davis*, 2008-Ohio-2, ¶ 260-261. Here, the prosecutor simply pointed out that the defense's strategy was to undermine the credibility of the police investigation, but the evidence of Baker's drug dealing was left uncontradicted.

{¶ 42} The prosecutor's comments were not an attempt to shift the burden of proof and were not improper. Baker's fourth assignment of error is overruled.

{¶ 43} Assignment of Error No. 5:

DEFENDANT WAS DENIED A FAIR TRIAL DUE TO CUMULATIVE ERRORS.

{¶ 44} In his fifth assignment of error, Baker argues that his conviction should be reversed due to cumulative error in his trial, presenting seven issues for our review. We do not find cumulative error.

{¶ 45} Pursuant to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. McClurkin*, 2010-Ohio-1938, ¶ 105 (12th Dist.). In order for the cumulative error doctrine to apply, "an appellate court must

- 12 -

find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 63 (12th Dist.).

{¶ 46} First, Baker reiterates his argument that the prosecutor made improper remarks in her closing at trial. As we already explained in our treatment of Baker's fourth assignment of error, the prosecutor's remarks were not improper.

{¶ 47} Second, Baker argues that the trial court should have severed the trials for the two counts of aggravated trafficking in drugs, as Count One related to an offense occurring on October 11, 2022, and Count Two related to an offense occurring on November 15, 2022. Joinder of counts for trial is not prejudicial where the evidence relating to each count is simple and direct. *State v. Matthews*, 2023-Ohio-3482, ¶ 38 (12th Dist.). In an entry on July 18, 2023, the trial court denied Baker's motion to sever these two counts for trial, holding that "Each offense is simple and direct and that evidence as to each offense is separate, uncomplicated, and sufficient to support a conviction if the jury were to convict, without necessitating the use of evidence relating to other offenses. There has been no showing that the defendant's rights would be prejudiced." The trial court was correct, the evidence relating to Counts One and Two was separate, and the offenses occurred more than a month apart. Further, that the jury did not reach a verdict on Count Two suggests that Baker was not prejudiced by joinder of the counts.

{¶ 48} Third, Baker argues the trial court should have granted his motion for a non-lawyer professional to meet privately in the Fayette County jail. In its July 18, 2023 judgment entry, the trial court denied the motion because Baker had not identified the individual with whom he would meet, nor had Baker provided a basis for a "private" meeting. However, the trial court's denial was conditional as the trial court explained that, "[s]ubject to the defense lawyers identifying specific individuals and indicating what the

need for a confidential meeting would be based on said motion will not be granted." Baker never provided this information.

{¶ 49} Baker does not explain in his brief how he was prejudiced by the denial of this motion and it is not apparent why counsel could not have served as a liaison between Baker and this non-lawyer professional, or why Baker could not have met privately with counsel and had the non-lawyer professional present. It appears that the privacy Baker sought for this meeting conflicted with jail security procedures.

{¶ 50} Fourth, Baker argues that the trial court should have granted his request for a second continuance of the suppression hearing. Baker sought the continuance because Shelby had been indicted for her part in the October 11, 2022 drug transaction and was refusing to testify at Baker's suppression hearing because of the charges pending against her. The trial court denied the motion for continuance and the suppression hearing went forward on July 31, 2023 as scheduled.

{¶ 51} Baker argues he was prejudiced by the trial court's denial of his motion for a continuance and its refusal to consider Shelby's affidavit at the suppression hearing. However, neither Shelby's affidavit nor proposed testimony was proffered into evidence, therefore we are unable to determine whether Baker suffered prejudice from the trial court's failure to continue the hearing to obtain her testimony. Additionally, there was no way for the trial court to know how long of a delay would have been necessary before Shelby would no longer be under indictment or have a change of heart about testifying.

{¶ 52} Fifth, Baker argues the trial court should have admitted two police narratives into evidence. During trial these narratives were used to refresh the police officers' recollection of events and for impeachment purposes. Baker's counsel moved to admit them into evidence at the close of trial, but the trial court denied admission. Nevertheless, Baker's counsel was given a full opportunity to cross-examine the officers concerning the

narratives. Neither of the police narratives were proffered into evidence, therefore, we cannot review whether Baker was prejudiced by the exclusion of the narratives from evidence, and Baker identifies no specific prejudice in his brief.

**{¶ 53}** Sixth, Baker argues that the trial court should have compelled the production of the metadata of the videos of the drug purchase. In his brief, Baker asserts the metadata "was essential to challenging the officers' claims of video integrity, especially the CI's request to delete segments." Baker offers no further explanation, citations to the record, or supporting arguments. App.R. 16(A)(7) provides that an appellant's brief shall contain, "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support to the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) provides, "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." We decline to consider this issue due to Baker's failure to comply with App.R. 16(A) and 12(A)(2).[3]

**{¶ 54}** Seventh, Baker argues he was denied a fair trial when the trial court admitted the CI's hearsay statements made in the recording of the drug transaction. However, Baker does not specify which portions of the recording and which statements contained hearsay. The state asserts that the CI's statements in the recording were not hearsay, as they were not offered for the truth of the matter asserted therein but to "provide meaning and context" to Baker's Statements. It is possible that some of what

---

3. We note that apparently Baker failed to brief the necessity of the metadata to the trial court as well. In the trial court's judgment entry journalized on July 18, 2023, the trial court denied Baker's motion to compel discovery of the metadata, finding "the defense refers to metadata on the videos but fails to indicate how that is relevant or would aid in the defense of this case."

the CI said on the recording is hearsay, however, it is not the duty of the court to scour the video and identify which statements are hearsay and whether they are prejudicial.

{¶ 55} Having reviewed the seven issues raised by Baker, we find Baker has not demonstrated that he was deprived of a fair trial due to cumulative error. Baker's fifth assignment of error is overruled.

### III. Conclusion

{¶ 56} For the reasons outlined above, having dismissed Baker's third assignment of error for lack of a final appealable order, and finding no merit to any of Baker's other four assignments of error, Baker's conviction for one count of aggravated trafficking in drugs is affirmed.

{¶ 57} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.